**America's Wholesale Lender v. Ryan**

*Christopher S. Brown, for plaintiff.*
*Roseann E. Weisblatt, for defendants*

ZULICK, J., June 19, 2013—This case arises out of a mortgage entered into by Harold Mooney (Mooney) and America's Wholesale Lender (AWL). The Property mortgaged was owned by Mooney and Kathleen Ryan (Ryan). AWL seeks to have this court reform the mortgage to encumber Ryan's interest in the property as well as Mooney's Ryan opposes this request. Both parties have filed motions for summary judgment, and argued their positions to the court on June 3, 2013.

## DISCUSSION

"Summary judgment is only appropriate in cases where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Gleason v. Borough of Moosic*, 609 Pa. 353, 361 (2011). A material fact is one that directly affects the outcome of the case. *Bartlett v. Bradford Publ'g, Inc.*, 885 A.2d 562, 568 (Pa. Super. 2008). A court must view the evidence in the light most favorable to the nonmoving party, and all doubts as to a genuine issue of material fact must be resolved against the moving party. *Gleason*, 609 Pa. at 361 (citing *Fine v. Checcio*, 582 Pa. 253 (2005)). When the moving party satisfies its initial burden, the nonmoving party may not simply rest upon the allegations or denials contained in the pleadings, instead the nonmoving party must show there is a genuine issue for trial. *Preferred Fire Prot., Inc. v. Joseph Davis, Inc.*, 984 A.2d 20, 24 (Pa. Super. 2008). A nonmoving party's failure to adduce sufficient evidences on an issue essential to the case establishes that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *Ario v. Ingram Micro, Inc*, 965 A.2d 1194, 1207 n.15 (Pa. 2009).

The relevant facts in the present matter are not in dispute. Mooney and Ryan took title to the mortgaged property (property) in August of 2000 as joint tenants with rights of survivorship. Ryan and Mooney were co-mortgagors on the purchase money mortgage loan, which was issued by Chase Manhattan Bank. While Ryan was unemployed at the time of the 2000 mortgage, she signed the mortgage along with Mooney.

In 2004, Mooney applied to AWL for a mortgage to refinance the existing mortgage on the property. AWL made the mortgage loan to Mooney in the amount

of $93,750.00. AWL did not require Ryan to sign the 2004 note and mortgage. Ryan did sign the settlement statement, owner's affidavit for title insurance and a document entitled "Disbursement Method for Proceeds." She did not sign the mortgage, the note, or the closing instructions. These documents did not have signature lines for Ryan. The mortgage proceeds check was made out to both Mooney and Ryan. While there is a dispute as to how the proceeds were then used by the defendants, that is not a material issue, for reasons to be discussed. As there are no questions of material fact, the case is ripe for summary judgment.

The Pennsylvania Supreme Court considered the issue of mortgage reformation in *Regions Mortg., Inc. v. Muthler,* 889 A.2d 39 (Pa. 2005). In Regions, Joseph and Susan Muthler applied for a mortgage to CTX Mortgage Company. Both their names appeared on the mortgage documents as initially drafted, but before closing CTX unilaterally removed Susan Muthler's name from the mortgage, and she did not sign the mortgage. Shortly thereafter, Joseph Muthler died. Susan Muthler asserted that she had taken the property (which was held as tenants by the entirety) free and clear of the mortgage. Regions, the successor in the mortgage to CTX, filed an action for quiet title.

These facts are almost identical to those in the present matter. In Regions, the supreme court did not allow a reformation of the mortgage. The court held:

when a mortgagee fails to property secure a loan, the equitable remedy of reformation is unavailable unless bad faith, accident, or mutual mistake can be shown,

and in the case of unilateral mistake, the party against whom reformation is sought must be shown to have knowledge of the mistake sufficient to justify an inference of fraud or bad faith.

*Regions*, 889 A.2d at 42. Here, AWL has not made the requisite showings to justify this court reforming the mortgage to encumber Ryan's interest. Ryan's failure to sign the mortgage or the note was not an "accident" in the sense that there was no signature line for her on either document. AWL has also not shown, and does not appear to contend, that either defendant acted in bad faith in the execution of the 2004 mortgage.

AWL does contend that the mortgage should be reformed due to the mutual mistake of both the defendants and the mortgagee. AWL argues that the clear intent of both parties was for Mooney and Ryan to sign the mortgage and thereby preserve the joint tenancy ownership of the property.

However, this argument has been rejected by the supreme court in Regions. Regions made a similar argument, alleging that reformation was proper due to mutual mistake. The court stated:

A mutual mistake is "1. A mistake in which each party misunderstands the other's intent.... 2.A mistake that is shared and relied on by both parties to a contract." Black's Law Dictionary 1023 (8th ed. 2004). Regarding the "mistakes" alleged here, there was no evidence that any party misunderstood the other's intent. The mortgagee clearly understood the Muthlers' intent, which was to obtain a mortgage to finance the purchase of a property to be held jointly by husband and wife. The

> Muthlers did not misunderstand the mortgagee's intent; they merely followed instructions issued by CTX, and acquiesced to CTX's decision to have Joseph alone execute the mortgage. Thus, none of the allegations satisfy the definition of "mutual mistake."

*Regions*, 889 A.2d at 41.

The same logic prevents application of the mutual mistake doctrine here. Ryan and Mooney wished to refinance their mortgage. The mortgagee understood that this was their intent. Defendants signed the documents the mortgagee presented to them for signature. For reasons that are unclear, Ryan was not required to sign either the note or the mortgage. The mistake was therefore solely that of AWL. AWL has made no showing that Ryan knew of the mistake such that an inference of fraud or bad faith could be drawn against her. While AWL undoubtedly erred in failing to have Ryan sign the note and mortgage, "bad decisions are not mistakes that entitle one to reform legal obligations." *Id.* at 42. Ryan cannot therefore be held accountable for AWL's business practices.

AWL seeks to distinguish the present matter from *Regions* in that the property in *Regions* was held between the Muthlers as tenants by the entirety, whereas here the property was held as joint tenants with right of survivorship. AWL argues that in order for the joint tenancy to be severed by the 2004 mortgage, there must be sufficient showing that either joint tenant intended to sever one of the four unities comprising the joint tenancy. Plaintiff's motion for summary judgment at 13. There is no dispute that upon purchase in 2000 defendants created a joint tenancy. "The essence of a JTWROS is the four

unities: interest, title, time, and possession." *In re Estate of Quick*, 905 A.2d 471, 474 (Pa. 2006). But joint tenancies can be broken. "A joint tenancy is severed when one or more of the four unities is destroyed." *Id.* at 475. Such severance can be brought about by action of any of the joint tenants. *Id.* "Although a voluntary act on the part of one of the joint tenants is adequate to work a severance, that act must be of sufficient manifestation that the actor is unable to retreat from his position of creating a severance of the joint tenancy."

Here, Mooney granted a mortgage to AWL on his interest in the property. In so doing, he destroyed one of the four unities that are at the heart of a joint tenancy, namely the unity of title. "Where fewer than all of the joint tenants [execute] a mortgage on the joint tenancy property, the mortgage [effectuated] a severance of the joint tenancy." *General Credit Co. v. Cleck*, 609 A.2d 553, 557 (Pa. Super. 1992). Mooney, by granting a mortgage on the property, destroyed the joint tenancy and thereby created a tenancy in common. Mooney's share of the tenancy in common will be subject to the mortgage. Ryan's share will not.

Finally, AWL argues that Ryan has been unjustly enriched. AWL avers that the money loaned to Mooney was issued as a check to both Mooney and Ryan, and that a substantial part of said loan was used by defendants to pay off the 2000 mortgage. AWL further states that some of the residual amount of the loan was used to pay Ryan's personal debts, though Ryan denies this to be the case. Ultimately, what the loan proceeds were used, and by whom, are immaterial.

In Pennsylvania, the doctrine of unjust enrichment is

well defined.

> The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. Whether the doctrine applies depends on the unique factual circumstances of each case. In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.

> Moreover, *the most significant element of the doctrine is whether the enrichment of the defendant is unjust. The doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff.*

*Stoeckinger v. Presidential Financial Corp. of Delaware Valley*, 948 A.2d 828 (Pa. Super. 2008) (emphasis added). Here, AWL now acknowledges that it erred in failing to have Ryan sign the 2004 mortgage. As discussed, supra, Ryan had no knowledge of the error, did not act in a fraudulent manner, or induce AWL's error in bad faith. Further, while the check disbursing the loan funds was made out to both defendants, this was not required. As Mooney was the only signatory to the mortgage, he could have demanded the check be made out solely in his name. that he did not do so, or that he used his proceeds to pay Ryan's portion of the 2000 mortgage and perhaps some of her personal expenses was his personal decision. It does not implicate defendant Ryan.

While it is no doubt unfortunate for AWL that their

mortgage is only secured by Mooney's interest in the property, there is nothing inherently unjust about such a result. Indeed, considering Ryan's lack of involvement throughout the entire 2004 mortgage process (her name and signature is conspicuously absent from many of the documents in addition to the mortgage and note) it would be more unjust to encumber her interest in the property in a transaction to which she was not a full party. AWL did not property secure their loan, and therefore cannot seek recompense through unjust enrichment.

## ORDER

And now, this 19th day of June, 2013, upon consideration of both parties' cross motions for summary judgment, their respective briefs and arguments, it is ordered as follows:

1. Plaintiff's motion for summary judgment is denied.

2. Defendant Kathleen M. Ryan's motion for summary judgment is granted.

3. Judgment is entered in defendant Kathleen M. Ryan's favor.