**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LOUIS J. LOMBARDO AND ROCCO B. LOMBARDO | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| RANDALL W. STEPHENS | : | |
| | : | |
| Appellee | : | No. 967 EDA 2018 |

Appeal from the Judgment Entered March 14, 2018
In the Court of Common Pleas of Wayne County
Civil Division at No(s): 634-CIVIL-2015

| | | |
|---|---|---|
| LOUIS J. LOMBARDO AND ROCCO B. LOMBARDO | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellees | : | |
| v. | : | |
| | : | |
| RANDALL W. STEPHENS | : | |
| | : | |
| Appellant | : | No. 1051 EDA 2018 |

Appeal from the Judgment Entered March 14, 2018
In the Court of Common Pleas of Wayne County
Civil Division at No(s): No. 634-CIVIL-2015

BEFORE: GANTMAN, P.J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY GANTMAN, P.J.: **FILED JUNE 04, 2019**

Appellants/Cross-Appellees, Louis J. Lombardo and Rocco B. Lombardo, and Appellee/Cross-Appellant, Randall W. Stephens, appeal from the judgment entered in the Wayne County Court of Common Pleas in this quiet title action. We affirm.

The relevant facts and procedural history of this case are as follows.

Appellants/Cross-Appellees Lombardo own property that shares a common boundary line with Appellee/Cross-Appellant Stephens. The parties derive their respective titles to the properties from the same grantor, Boyd L. Bedford. Prior to the relevant conveyances at issue, Mr. Bedford owned 262 acres of land in Wayne County ("the Farm Property"). On June 17, 1948, Mr. Bedford acquired title to approximately 83 acres of undeveloped land from A.J. Wall ("the Wall Property"), to the east of the Farm Property.

On June 5, 1967, in exchange for $3000.00, Mr. Bedford executed a deed containing a general warranty of title for the Wall Property to Appellant/Cross-Appellee Louis J. Lombardo and Nicholas Lombardo.[1] Before this transfer, Mr. Bedford had the property surveyed by Earl Kingsbury ("the Kingsbury survey"). This deed was recorded on July 6, 1967, along with the Kingsbury survey. The relevant portion of Appellants/Cross-Appellees Lombardo's deed is as follows:

> [Beginning] at the North West Corner hereof Being a large Hemlock tree Witnessed for the Corner, thence along an old line of Blazed trees and being in the old Warrantee line of the Henry Speering tract. North on Present bearing of 57 degrees East 2721 feet to a Stones Corner witnessed, thence along a line of land of Jerry Gagdorus and James Sanford, South 8 degrees West 3120 feet to point in center of the Starrucca to Maple Grove road, thence along center of the same South 59 degree[s] West 187 feet, thence South 62 degrees West 300 [feet] to a point in Center [of] said Road, and in the Easterly line of the B.L. Bedford Home

_____

[1] Nicholas Lombardo died on June 24, 2000, and Appellant/Cross-Appellee Rocco B. Lombardo acquired Nicholas Lombardo's share of the property on November 9, 2000.

- 2 -

farm, **thence along same North 35 degrees West 2153 feet to the place of [beginning]**.  CONTAINING 83 Acres and 39 Square rods of land be the same more or less subject to 1/3 of the road, and being so much of the same property deeded to B.L. Bedford by a Deed from A.J. Wall, and Louise R. Wall his wife by a deed dated June 16th 1948, and duly recorded…and according to a Survey made by Pennsylvania Licensed Surveyor on May 13th 1967 by Karl T. Kingsbury.

(Appellants/Cross-Appellees Lombardo's Deed at 1; R.R. at 65) (emphasis added).  After Appellant/Cross-Appellee Louis Lombardo paid Mr. Bedford for the property, Mr. Bedford had a discussion with Appellant/Cross-Appellee Louis Lombardo, in the presence of Appellee/Cross-Appellant Stephens, who was 9 years old.  Mr. Bedford stated that the boundary line between the two properties was along a barbed wire fence, which ran northwest from Maple Grove Road to a large hemlock tree.

On December 31, 1974, Mr. Bedford executed another deed for the Farm Property to himself, Appellee/Cross-Appellant Stephens, and non-parties Gladys Stephens and Matthew Stephens as joint tenants with the right of survivorship.  This deed was recorded on January 13, 1975.  Mr. Bedford died on May 6, 1976.  Gladys Stephens and Matthew Stephens subsequently filed a partition action for the property jointly held with Appellee/Cross-Appellant Stephens.  On May 7, 2003, those parties entered into a stipulation regarding the partition of their property.  Appellee/Cross-Appellant Stephens acquired his current property by deed dated October 26, 2004, which shares the common boundary line with Appellants/Cross-Appellees Lombardo's property.  This deed was recorded on May 31, 2007.  The relevant portions of

Appellee/Cross-Appellant Stephens' deed are as follows:

BEGINNING at a point in the center of Maple Grove Road (T788), said point being the southwesterly corner of lands of Louis and Rocco Lombardo (Deed Book 1714 Page 286) and running: thence along the center of said Maple Grove Road the following twelve (12) courses and distances: (1) S 65° 29' 37" W, 111.90 feet, (2) S 70° 24' 36" W, 137.52 feet, (3) S 73° 50' 27" W, 169.93 feet, (4) S 85° 50' 33" W, 123.86 feet, (5) N 72° 50' 29" W, 98.64 feet, (6) N 57° 47' 99" W, 114.06 feet, (7) N 51° 10' 16" W, 269.68 feet, (8) N 49° 22' 34" W, 194.13 feet, (9) N 51° 50' 02" W, 79.81 feet, (10) N 55° 32' 17" W, 161.97 feet, (11) N 68° 31' [40"] W, 150.56 feet and (12) N 74° 28' 59" W, 85.25 feet to a corner in said road. Thence S 17° 08' 53" W, 151.78 feet thru lands of the grantor passing a #4 rebar set at 24.39 feet a #4 rebar set. Thence S 73° 42' 45" W, 724.36 feet thru lands of the grantor to a #4 rebar set. Thence N 38° 03' 37° W, 198.70 feet thru lands of the grantor passing a #4 rebar set at 177.12 feet to a point in the center of Maple Grove Road. Thence S 50° 41' 01" W, 1.41 feet along the center of said Maple Grove Road to a corner. Thence N 12° 27' 52" W, 168.30 feet thru lands of the grantor passing a #4 rebar set at 21.79 feet to a #4 rebar set. Thence N 09° 12' 50" W, 127.85 feet thru lands of the grantor to a #4 rebar set. Thence N 00° 16' 25" E, 181.87 feet thru lands of the grantor to a #4 rebar set. Thence N 06° 27' 12" W, 835.30 feet thru lands of the grantor to a #4 rebar set. Thence N 71° 32' 53" W, 414.79 feet thru lands of the grantor to a #4 rebar set on the southerly line of lands of Thomas and Carol Lopatofsky (Deed Book 360 Page 192). Thence N 49° 32' 15" E, 1124.74 feet along the southerly line of said Lopatofsky [lands] to a #6 rebar found on the westerly line of lands of Vaughn Buchanan (Deed Book 2270 Page 162). **Thence S 40° 00' 00" E, 3167.52 feet along the westerly line of said Buchanan and lands of Leon O'Droniec (Deed Book 1236 Page 1) and Louis and Rocco Lombardo passing a #4 rebar set at 3132.52 feet to the center of Maple Grove Road**, the point of beginning and containing 73.58 acres being more or less.

BEING Lot 1 on a subdivision plan prepared by Christopher Knash, P.L.S. dated January 2000, revised November 28, 2003 and December 6, 2003….

(Appellee/Cross-Appellant Stephens' Deed at 1; R.R. at 54) (emphasis added). Appellee/Cross-Appellant Stephens' current deed described the property in terms of a map prepared by surveyor Christopher Knash ("the Knash survey"). The deeds and the Kingsbury and Knash surveys conflict regarding the common boundary line of the two properties.

On November 13, 2015, Appellants/Cross-Appellees Lombardo filed an action to quiet title. Both parties filed competing motions for summary judgment, which the court denied on April 22, 2016. In June 2016, Appellants/Cross-Appellees Lombardo hired surveyor Alfred Bucconear to perform a survey ("the Bucconear survey"), which concluded Appellants/Cross-Appellees Lombardo's 1967 deed and the Kingsbury survey accurately portrayed the correct boundary line. Appellants/Cross-Appellees Lombardo filed a second motion for summary judgment on April 12, 2017.

The court held a bench trial on May 30, 2017. During trial, Appellant/Cross-Appellee Louis Lombardo testified that Mr. Bedford told Appellant/Cross-Appellee Louis Lombardo at the time of conveyance that a barbed-wire fence marked the boundary line of the two properties. Appellants/Cross-Appellees Lombardo's deed and the Kingsbury survey do not mention this barbed wire fence. Appellant/Cross-Appellee Louis Lombardo also testified that Appellee/Cross-Appellant Stephens was present at this conversation, although he was only about 9 years old. Mr. Bucconear testified that Appellants/Cross-Appellees Lombardo's deed call exceeds the adjoinder

line by 63.95 feet, which reflects what Mr. Bedford told Appellant/Cross-Appellee Louis Lombardo about the barbed-wire fence at the time of conveyance. Mr. Bucconear also testified that a partial stone row and wire fence generally follow the correct boundary line.

The court entered a verdict in favor of Appellants/Cross-Appellees Lombardo on July 17, 2017. On July 19, 2017, the court denied Appellants/Cross-Appellees Lombardo's second motion for summary judgment as moot. On July 25, 2017, Appellants/Cross-Appellees Lombardo filed a post-trial motion, which sought attorneys' fees and costs. The court, on August 4, 2017, vacated its July 17, 2017 verdict to schedule a hearing on Appellants/Cross-Appellees Lombardo's post-trial motion. The court held a hearing on October 25, 2017. The following day, the court denied Appellants/Cross-Appellees Lombardo's post-trial motion.

On November 2, 2017, Appellants/Cross-Appellees Lombardo and Appellee/Cross-Appellant Stephens each filed a *praecipe* to enter judgment based on the August 4, 2017 order. That same day, the clerk of courts entered judgment in favor of Appellee/Cross-Appellant Stephens. On November 3, 2017, Appellants/Cross-Appellees Lombardo filed a petition to strike or open the judgment because the August 4, 2017 order was not representative of the court's verdict. On November 7, 2017, both parties stipulated to strike the November 2, 2017 judgment. On November 9, 2017, the court vacated the October 26, 2017 order that denied Appellants/Cross-Appellees Lombardo's

post-trial motion and entered a new verdict to clarify the verdict in favor of Appellants/Cross-Appellees Lombardo. The court expressly adopted Appellants/Cross-Appellees Lombardo's proposed findings of fact and conclusions of law, with the exception of paragraphs 20 through 26 in their proposed conclusions of law. The court further confirmed Appellants/Cross-Appellees Lombardo's deed and reformed the deed of Appellee/Cross-Appellant Stephens, as specified in Appellants/Cross-Appellees Lombardo's exhibit 4. Finally, the court denied Appellants/Cross-Appellees Lombardo's post-trial request for attorney's fees.

Appellee/Cross-Appellant Stephens filed post-trial motions on November 15, 2017, and Appellants/Cross-Appellees Lombardo filed post-trial motions on November 17, 2017. Both parties filed notices of appeal, however, this Court quashed both appeals as premature due to open post-trial motions. On March 14, 2018, the court denied both sets of post-trial motions. The court also entered judgment in favor of Appellants/Cross-Appellees Lombardo on their quiet title action and against Appellants/Cross-Appellees Lombardo regarding their claim for attorneys' fees and costs. On March 21, 2018, Appellants/Cross-Appellees Lombardo timely filed a notice of appeal. The following day, the court ordered Appellants/Cross-Appellees Lombardo to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On March 29, 2018, Appellants/Cross-Appellees Lombardo timely filed a Rule 1925(b) statement, and Appellee/Cross-Appellant Stephens timely

filed a notice of appeal. On April 6, 2018, the court ordered Appellee/Cross-Appellant Stephens to file a Rule 1925(b) statement; Appellee/Cross-Appellant Stephens timely complied on April 9, 2018.

At Docket No. 967 EDA 2018, Appellants Lombardo raise the following issues for our review:

> WHERE A GRANTOR CONVEYS LAND BY A "GENERAL WARRANTY DEED" RETAINING AN ADJOINING PARCEL, AND, THEREAFTER HIS SUCCESSOR JOINS IN THE ISSUANCE TO HIMSELF AS SOLE GRANTEE A CONFLICTING CONVEYANCE, IS APPELLEE LIABLE, IN A QUIET TITLE ACTION, FOR REIMBURSEMENT OF THE LEGAL FEES AND EXPENSES INCURRED BY [APPELLANTS] IN DEFENDING THEIR TITLE TO THE SUBJECT PROPERTY?
>
> DID THE COURT OF COMMON PLEAS ERR IN FAILING TO MAKE AN AWARD OF DAMAGES IN FAVOR OF [APPELLANTS] AND AGAINST [APPELLEE] ON THE BASIS OF "BREACH OF GENERAL WARRANTY"?
>
> UNDER THE PROVISIONS OF 21 P.S. SECTION 5 "WARRANT GENERALLY CONSTRUED" IS [APPELLEE] LIABLE TO [APPELLANTS] FOR COSTS AND EXPENSES EXPENDED BY APPELLANTS IN DEFENDING THEIR TITLE TO THE SUBJECT LAND IN A [QUIET TITLE] ACTION?

(Appellants Lombardo's Brief at 2).

At Docket No. 1051 EDA 2018, Appellant Stephens raises the following issues for our review:

> WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW BY ADOPTING A COMMON BOUNDARY LINE WHICH IS IN CONTRADICTION OF THE WARRANTEE LINE WHICH BOTH SURVEYORS ACKNOWLEDGED SEPARATED THE TWO PROPERTIES AND BY REFERENCING AND RELYING ON FIELD EVIDENCE TO ESTABLISH A BOUNDARY LINE WHICH WAS NOT REFERENCED OR CALLED FOR IN EITHER DEED DESCRIPTION[?]

WHETHER THE [TRIAL] COURT ERRED AS A MATTER OF LAW BY ALLOWING [PAROL] EVIDENCE OF A DEAD PERSON TO INTERPRET A DEED DESCRIPTION WHERE THE LANGUAGE OF THE PARTIES' DEEDS EVIDENCE[S] A CLEAR INTENT AS THE RESPECTIVE BOUNDARY LINE SEPARATING THE RESPECTIVE PARTIES?

WHETHER THE [TRIAL] COURT WAS WITHOUT SUBJECT MATTER JURISDICTION ON NOVEMBER 9, 2017, TO ISSUE A VERDICT WHEN THE COURT PREVIOUSLY VACATED ITS PRIOR VERDICT OF JULY 17, 2017 BY ITS ORDER OF AUGUST 4, 2017?

(Appellant Stephens' Brief at 4).

In their issues combined, Appellants/Cross-Appellees Lombardo argue Appellee/Cross-Appellant Stephens, as a successor in interest to Mr. Bedford, is legally bound to defend the title of Appellants/Cross-Appellees Lombardo under the general warranty provision. Appellants/Cross-Appellees Lombardo contend Appellee/Cross-Appellant Stephens' May 31, 2007 deed created a cloud on Appellants/Cross-Appellees Lombardo's title and Appellee/Cross-Appellant Stephens is required to reimburse Appellants/Cross-Appellees Lombardo for reasonable expenses incurred in this action to quiet title. Appellants/Cross-Appellees Lombardo conclude this Court should vacate the portion of the underlying judgment that denied their request for attorney's fees and remand for a determination of litigation expenses. We disagree.

In his first and second issues combined, Appellee/Cross-Appellant Stephens argues the language in Appellants/Cross-Appellees Lombardo's deed calls for an adjoinder between the Wall Property and the Farm Property, and

the Disputed Tract falls within the Farm Property. Appellee/Cross-Appellant Stephens asserts the court's verdict adopts a boundary line that directly contradicts the warrantee line acknowledged by both Mr. Knash and Mr. Bucconear. Appellee/Cross-Appellant Stephens contends the adopted boundary line elevates a distance call above an adjoinder call and relies on extrinsic evidence outside the plain language of the deeds, in violation of the parol evidence rule.

In his third issue, Appellee/Cross-Appellant Stephens argues the court had thirty days from the August 4, 2017 order, which vacated the July 17, 2017 verdict, to enter a new verdict. Appellee/Cross-Appellant Stephens avers the court lacked subject matter jurisdiction to enter a verdict after the passage of thirty days, and the November 9, 2017 verdict fell outside this thirty-day period. Appellee/Cross-Appellant Stephens contends this case was not overly protracted, which would allow the court to go beyond the thirty-day period to enter a new verdict.

Finally, Appellee/Cross-Appellant Stephens responds that the court properly denied Appellants/Cross-Appellees Lombardo's request for costs and expenses because Appellants/Cross-Appellees Lombardo possessed their land at all times. Appellee/Cross-Appellant Stephens continues that the only issue for the court was the determination of a common boundary line, and not ownership rights. Further, Appellee/Cross-Appellant Stephens avows he and Appellants/Cross-Appellees Lombardo derive their titles from different

sources, and he is not a successor in interest to Mr. Bedford with respect to Appellants/Cross-Appellees Lombardo's property. Appellee/Cross-Appellant Stephens concludes this Court should vacate the portion of the verdict that established a new boundary line and affirm the portion of the verdict that denied Appellants/Cross-Appellees Lombardo's request for costs and expenses. We agree in part and disagree in part.

This Court will not disturb a denial of attorneys' fees absent an abuse of discretion. *In re Padezanin*, 937 A.2d 475, 483 (Pa.Super. 2007). "A trial court has abused its discretion if it failed to follow proper legal procedures or misapplied the law." *Kessock v. Conestoga Title Insurance Co.*, 194 A.3d 1046, 1059 (Pa.Super. 2018). An evidentiary hearing is generally required for a trial court to decide a claim for attorneys' fees, unless the facts are undisputed. *In re Estate of Burger*, 852 A.2d 385, 391 (Pa.Super. 2004), *affirmed*, 587 Pa. 164, 898 A.2d 547 (2006).

A general warranty deed implicates the following:

### § 5. "Warrant generally" construed

A covenant or agreement by the grantor or grantors, in any deed or instrument in writing for conveying or releasing land that he, they, or it "will warrant generally the property hereby conveyed," shall have the same effect as if the grantor or grantors had covenanted that he or they, his or their heirs and personal representatives or successors, will forever warrant and defend the said property, and every part thereof, unto the grantee, his heirs, personal representatives and assigns, against the lawful claims and demands of all persons whomsoever.

21 P.S. § 5. "Where property has been conveyed by a deed of general

warranty, actual or constructive eviction, as a result of a defect of title, must be shown in order to recover on a breach of the warranty." **Kramer v. Dunn**, 749 A.2d 984, 991 (Pa.Super. 2000) (holding party is constructively evicted when party purchases general warranty deed to property from grantor who did not actually hold title).

Our standard of review on appeal from an action to quiet title is deferential: "In reviewing an action to quiet title, an appellate court's review is limited to determining whether the findings of fact are supported by competent evidence, whether an error of law has been committed, and whether there has been a manifest abuse of discretion." **Regions Mortgage, Inc. v. Muthler**, 585 Pa. 464, 467, 889 A.2d 39, 41 (2005).

> It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

**Hollock v. Erie Ins. Exchange**, 842 A.2d 409, 414 (Pa.Super. 2004) (*en banc*), *appeal dismissed as improvidently granted*, 588 Pa. 231, 903 A.2d 1185 (2006) (internal citations omitted).

The Pennsylvania Rules of Civil Procedure define the scope of an action to quiet title, in pertinent part, as follows:

**Rule 1061.  Conformity to Civil Action.  Scope**

*       *       *

(b)     The action may be brought

                            *     *     *

(2) where an action of ejectment will not lie, to determine any right, lien, title, or interest in the land or determine the validity or discharge of any document, obligation or deed affecting any right, lien, title or interest in land;

(3) to compel an adverse party to file, record, cancel, surrender or satisfy of record, or admit the validity, invalidity or discharge of, any document, obligation or deed affecting any right, lien, title or interest in land[.]

Pa.R.C.P. 1061(b)(2), (3).  To prevail in an action to quiet title, a party must demonstrate title by a fair preponderance of the evidence and *prima facie* proof of title is sufficient until the adverse party shows a better title.  ***Hallman v. Turns***, 482 A.2d 1284, 1287-88 (Pa.Super. 1984).  An action to quiet title, unlike an ejectment action, does not restrict a court to finding the rights only of the immediate plaintiff and defendant involved in the controversy.  ***Wells Fargo Bank, N.A. v. Long***, 934 A.2d 76, 78 (Pa.Super. 2007).  Rather, an action to quiet title determines the "relative and respective rights of all potential titleholders." ***Id.***

        When uncertainty exists in a deed due to vague or ambiguous language, a court may look to extrinsic or parol evidence to explain, but not vary, the written word.  ***Doman v. Brogan***, 592 A.2d 104, 109 (Pa.Super. 1991).  ***See also Flaherty v. DeHaven***, 448 A.2d 1108, 1111 (Pa.Super. 1982) (stating to ascertain meaning of deed when intentions of parties are unclear from instrument itself, court must look to language of entire instrument,

consideration of subject matter, and conditions that existed at time of execution, together with surrounding circumstances).  When calls of a deed are inconsistent, the court looks to, in order: (1) natural objects or landmarks; (2) artificial monuments; (3) adjacent boundaries; and (4) courses and distances.  **Doman, supra** at 110.  "[W]here the terms of a deed will admit of two reasonable interpretations (patent ambiguity), or where the calls conflict when applied to the ground whereby admitting of different reasonable bases for division (latent ambiguity), their construction, as a rule, …[is] a question of fact."  **Id.**  Further, ambiguities in a deed are to be construed to effectuate the intent of the parties and any doubt will be resolved against the preparer of the deed.  **Advance Industrial Supply Co. v. Eagle Metallic Copper Co.**, 267 Pa. 15, 19-20, 109 A. 771, 773-74 (1920).

If there is a dispute between boundaries in two conveyances from the same grantor, then the grantee with the first executed conveyance has superior title.  **Will v. Piper**, 134 A.2d 41, 44 (Pa.Super. 1957).  A survey made during the grantor's life is given great weight when settling a boundary dispute.  **Id.**  Consentable lines established by the parties themselves are given great weight, regardless of whether the line conforms to the exact courses, distances, and bounds of an original survey.  **Dimura v. Williams**, 446 Pa. 316, 319, 286 A.2d 370, 371 (1972).

After a bench trial, "[t]he trial judge shall render a decision within seven days after the conclusion of the trial except in protracted cases or cases of

extraordinary complexity." Pa.R.C.P. 1038(c). "Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed." 42 Pa.C.S.A. § 5505.

Instantly, the trial court analyzed Appellants/Cross-Appellees Lombardo's issues as follows:

> An actual eviction did not occur in the case at bar. Here, [Appellants/Cross-Appellees Lombardo's] title was never challenged by [Appellee/Cross-Appellant Stephens]. [Appellants/Cross-Appellees Lombardo's] ownership of the land contained in the deed was never challenged by [Appellee/Cross-Appellant Stephens]. [Appellants/Cross-Appellees Lombardo] would be entitled to fees if they were sued to defend their title. This common boundary line dispute arises from the discrepancy in deed descriptions, rather than from a superior claim of right or lien on [Appellants/Cross-Appellees Lombardo's] property. As such, [the c]ourt determined that, based on these facts, an award of attorney's fees was not warranted.

(Trial Court Opinion in Response to Appellants/Cross-Appellees Lombardo's Rule 1925(b) Statement, filed June 21, 2018, at 3). The record supports the trial court's rationale. *See In re Padezanin, supra*; *Kramer, supra*. Further, Appellants/Cross-Appellees Lombardo were not constructively evicted because Mr. Bedford had legal title to the land he sold to Appellants/Cross-Appellees Lombardo. *See id.* Therefore, the trial court properly denied Appellants/Cross-Appellees Lombardo's request for costs and attorneys' fees.

The trial court analyzed Appellee/Cross-Appellant Stephens' issues as

follows:

> The evidence presented at trial showed that the parties derived their respective titles from the same grantor, Boyd L. Bedford. As the intention of the parties may be shown by surrounding circumstances, evidence was permitted to be heard regarding the exchanges between the parties on the day [Mr.] Bedford delivered the deed to [Appellant/Cross-Appellee Louis Lombardo], while in [Appellee/Cross-Appellant Stephens's] presence.
>
> On July 5, 1967, [Mr.] Bedford executed and delivered to [Appellant/Cross-Appellee Louis Lombardo and Nicholas Lombardo,] a deed which contained [the Kingsbury Survey]. [Mr.] Bedford hired Mr. Kingsbury to perform the survey and either prepared or caused to be prepared [Appellants/Cross-Appellees Lombardo's] deed. The Kingsbury [Survey] depicts the lands legally described in the [Appellants/Cross-Appellees Lombardo's] deed and the common boundary in a manner generally consistent with a line running along a wire fence line and partial stone wall.
>
> At this same meeting, [Mr.] Bedford described the lands conveyed to [Appellants/Cross-Appellees Lombardo] by pointing to the fence as being the common boundary. At the time of the conveyance [Mr.] Bedford used the fence to enclose a cattle pasture, thereby treating the fence as being the location of the boundary of the farm he retained. Further, throughout the course of…litigation, [Appellee/Cross-Appellant Stephens] admitted that "we always believed…the common boundary line…to be close to the fence."
>
> [The c]ourt found that [Appellee/Cross-Appellant Stephens'] statements and those attributed to [Mr.] Bedford as well as the existence and use of the fence, when taken together as a whole, had the effect of mandating that [Appellants/Cross-Appellees Lombardo's] deed be construed to include the 63.95 feet of the B.L. Bedford Home farm consistent with its legal description and the Kingsbury [survey].
>
> At trial, [Appellee/Cross-Appellant Stephens] introduced [the Knash survey], which contradicted the Kingsbury

[survey]. The Knash [survey] similarly depicted a line running along a wire fence line and partial stone wall, but the Knash [survey] did not depict the "overlap" created by [Appellants/Cross-Appellees Lombardo's] deed onto the other lands owned by [Mr.] Bedford at the time he delivered the deed to the [Appellants/Cross-Appellees Lombardo]. As such, there was a conflict between [Appellants/Cross-Appellees Lombardo's] deed and [Appellee/Cross-Appellant Stephens'] deed since the common boundary line was not consistently described in them.

\* \* \*

Here, there is no dispute that [Appellants/Cross-Appellees Lombardo's] deed was the first executed. Therefore, any discrepancy was resolved in favor of [Appellants/Cross-Appellees Lombardo].

\* \* \*

While [Appellants/Cross-Appellees Lombardo's] deed was ambiguous in its description of the common boundary as being along the "Easterly line of the B.L. Bedford Home farm," when applying the distances recited to be along Maple Grove Road, the common corner of this boundary is described as being 63.95 feet further west, beyond the "Easterly line of the B.L. Bedford Home farm."

[The c]ourt found that the intention of the parties was that [Mr.] Bedford sold, and [Appellants/Cross-Appellees Lombardo] purchased, lands bounded by the fence line, as described by [Appellant/Cross-Appellee] Louis J. Lombardo from [Mr.] Bedford's representations in [Appellee/Cross-Appellant Stephens'] presence. Pursuant to Pennsylvania law, this ambiguity is resolved against [Mr.] Bedford as the grantor who drafted or caused to be drafted the deed, and [Appellee/Cross-Appellant Stephens] as [Mr. Bedford's] successor, in favor of [Appellants/Cross-Appellees Lombardo].

\* \* \*

By way of procedural history, a non-jury trial was held in this matter on May 30, 2017. [The c]ourt entered a Verdict

in favor of [Appellants/Cross-Appellees Lombardo] and against [Appellee/Cross-Appellant Stephens] on July 17, 2017. On July 25, 2017, [Appellants/Cross-Appellees Lombardo] filed a Motion for Post-Trial Relief seeking an award of attorney's fees and costs pursuant to Title 21 P.S. Section 5. To permit argument on said Motion, [the c]ourt entered an Order on August 4, 2017, which vacated the Verdict dated July 17, 2017 and scheduled a hearing for September 18, 2017. On August 25, 2017 [Appellants/Cross-Appellees Lombardo] filed an unopposed motion to continue the hearing on the Motion for Post-Trial Relief, and the matter was rescheduled to October 25, 2017. On October 26, 2017, [the c]ourt entered an Order denying said Motion. Subsequently, on November 2, 2017, [Appellee/Cross-Appellant Stephens] filed with the Prothonotary of Wayne County a Praecipe to Enter Judgment in favor of [Appellee/Cross-Appellant Stephens] and against [Appellants/Cross-Appellees Lombardo] pursuant to the "Final Judgment" dated August 4, 2017, which vacated the Verdict of July 17, 2017. As such "Final Judgment" was in contradiction of [the c]ourt's findings in the Verdict entered July 17, 2017, [Appellants/Cross-Appellees Lombardo] filed a Petition to Strike or Open Judgment on November 3, 2017. The parties stipulated to strike the judgment entered on November 2, 2017, and said Stipulation was made an Order of Court on November 7, 2017.

For clarification purposes, [the c]ourt entered a comprehensive, second Verdict on November 9, 2017, which found in favor of [Appellants/Cross-Appellees Lombardo] and against [Appellee/Cross-Appellant Stephens] and also denied [Appellants/Cross-Appellees Lombardo's] Motion for Post-Trial Relief to include an award of attorney's fees. Subsequently, both parties filed Motions for Post-Trial Relief and Notices of Appeal of [the c]ourt's Order dated November 9, 2017.

On January 12, 2018[,] the Superior Court quashed the consolidated appeals as premature because post-trial motions were pending in [the trial c]ourt, and as such, no final judgment was entered. On remand, [the c]ourt entered two (2) Orders dated March 14, 2018, each of which: (1) denied both parties' post-trial motions; and (2)

entered final judgment on behalf of [Appellants/Cross-Appellees Lombardo] and against [Appellee/Cross-Appellant Stephens]. The Order dated March 14, 2018, which entered final judgment, is the subject of the instant appeal.

[Appellee/Cross-Appellant Stephens] now contends that [the c]ourt lacked subject matter jurisdiction to issue a new Verdict on November 9, 2017, and subsequently a judgment on March 14, 2018. [Appellee/Cross-Appellant Stephens] relies on Pa.R.C.P. 1038(c), which states in relevant part that after a trial without jury "[t]he decision may be made…in writing and filed forthwith…. The trial judge shall render a decision within seven days after the conclusion of the trial except in protracted cases or cases of extraordinary complexity."

Merriam-Webster defines "protracted" as "to prolong in time or space." As this matter was filed in 2015 and a brief review of the filings will show, this matter constituted a protracted case. Therefore, issuing the Verdict dated November 9, 2017 and subsequently a judgment on March 14, 2018 was proper.

\* \* \*

Here, the [c]ourt acted properly within its discretion to modify and rescind the orders complained of.

(Trial Court Opinion in Response to Appellee/Cross-Appellant Stephens' Rule 1925(b) Statement, filed June 21, 2018, at 2-6). The record supports the trial court's rationale. *See* 42 Pa.C.S.A § 5505; *Regions Mortgage, Inc., supra*; *Advance Industrial Supply Co., supra*; *Doman, supra*; *Hallman, supra*; *Will, supra*. Appellants/Cross-Appellees Lombardo's deed and the Kingsbury survey both agree on the heading of the boundary in dispute. The conversation between Appellant/Cross-Appellee Louis Lombardo and Mr. Bedford, however, occurred after Appellant/Cross-Appellee Louis Lombardo

paid Mr. Bedford for the property and created an ambiguity. Therefore, the court properly used this conversation and the fence line to clarify the intentions of the parties at the time of conveyance. ***See Dimura, supra***; ***Doman, supra***. Accordingly, we affirm the judgment.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/4/19